United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

EILEEN ELAM,

          Plaintiff,

    v.

ANTHEM LIFE INSURANCE COMPANY,

          Defendant.

Case No.  5:19-cv-04269-EJD

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART ANTHEM LIFE INSURANCE'S MOTION FOR JUDGMENT UNDER FRCP 52**

Re: Dkt. Nos. 29, 31

Plaintiff, Eileen Elam ("Elam"), brought this suit under the Employee Retirement Income Security Act ("ERISA"), specifically 29 U.S.C. § 1132 (a)(1)(B), challenging Defendant Anthem Life Insurance Company's ("Anthem") denial of her claims for short-term disability insurance ("STD") and long-term disability insurance ("LTD") benefits.  Dkt. No. 1.  The Anthem insurance plan at issue was provided to Elam by her former employer, Overland Storage, Inc. ("Overland") as part of the Overland Storage, Inc. Welfare Benefit Plan ("the Plan").

Pending before the Court are the parties' cross motions for judgment under Federal Rule of Civil Procedure 52.  *See* Pl.'s Not. of Motion, and Mem. of P.&A. in  Supp. of Mot. for J. Under F. R. Civ. P. 52 ("Elam's Mot."), Dkt. No. 26; Def. Anthem's Not. of Mot. and Mot. Under FRCP 52; Mem. in Opp'n to Elam's Mot. for J. and in Supp. of Def.'s Mot. ("Anthem's Mot."), Dkt. No. 31; Pl.'s Opp'n/Reply to Cross-Mots. for J. Under F. R. Civ. P. 52 ("Elam's Opp'n"), Dkt. No. 33;

Case No.: 5:19-cv-04269-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

Def. Anthem's Reply in Supp. of Cross-Mot. Under FRCP 52 ("Anthem's Reply"), Dkt. No. 34.

Plaintiff seeks benefits from Anthem for the period August 15, 2016 through June 24, 2018, plus

interest.  For the reasons stated below, the parties' respective motions are granted in part and

denied in part.

## I.     BACKGROUND

### A.     Vocational History

Elam began her employment with Overland in October 2015 as the director of marketing.

AR 291.  Elam was in charge of branding and messaging for Overland, including maintaining

Overland's website and social media accounts and interacting with the press.  AR 291, 1492.

Elam worked long hours, mostly in front of a computer, and earned $145,000 as her base salary.

AR 119, 291, 1492.

### B.     Plan Provision

The Plan provides for STD benefits beginning on the fifteenth day of disability and for a

maximum of thirteen weeks.  AR 329.  LTD benefits begin thereafter.  AR 3363.  The Plan

defines "Disability" for STD benefits as follows:

> ***Disabled*** and ***Disability*** mean during the Elimination Period and
> thereafter because of Your Injury or Illness, all of the following are
> true:
>
> - You are unable to do the Material and Substantial Duties of
>   Your Own Occupation; and
> - You are receiving Regular Care from a Physician for that
>   Injury or Illness; and
> - Your Disability Work Earnings, if any, are less than or equal
>   to 80% of Your Weekly Earnings.
>
> If you are working and Your Disability Work Earnings are more than
> 80% of Your Weekly Earnings, no Short Term Disability benefit will
> be payable.

AR 342.  The Plan provides that "Material and Substantial Duties" are duties that  (1) "are

normally required for the performance of Your Own Occupation or any occupation"; *and* (2)

"cannot be reasonably omitted or modified except that We will consider You able to perform the

United States District Court
Northern District of California

Material and Substantial duties if You are working or have the capability to work your normal scheduled work hours." AR 334. The Plan also requires claimants to apply for benefits through the Social Security Administration ("SSA") when seeking benefits under the Plan. AR 351.

The LTD definition of disability is essentially the same. AR 3378. One's "Own Occupation" is not defined for purposes of STD benefits, but for LTD benefits it means "[t]he occupation that you regularly performed and for which you were covered under the policy immediately prior to the date your disability began." AR 3368. The LTD Plan provides for an elimination period of "the longer of: 90 days; or until the expiration of any Employer sponsored short term disability benefits." AR 3378.

### C.    Summary of Medical History

On April 2, 2016, Elam who is now 57 years-old, suffered a concussion when she fell while mountain biking, struck the side of her head and tumbled down a small ravine. AR 103, 809, 1492. She was wearing a helmet when she fell. AR 817. Elam's primary concern was excruciating neck pain (AR 291), for which she sought treatment from Dr. Michael McMurray, a chiropractor, on April 2, 2016, April 4, 2016, April 8, 2016 and April 18, 2016. AR 97-109. Elam also began experiencing listlessness/fatigue, dizziness, poor balance, headaches, difficulty concentrating, sensitivity to light, and blurry vision. AR 78, 103, 256, 291, 809, 862, 941, 1346, 1492-94.

On April 20, 2016, Elam was seen by Dr. Luthra. AR 256. A computed tomography (CT) of the brain without contrast dated April 20, 2016, was "unremarkable." AR 256. X-rays of Elam's facial bones dated April 20, 2016 revealed a nasal bone fracture. AR 257. Dr. Luthra diagnosed a concussion and placed Elam off work from April 25, 2016 through April 29, 2016. AR 256-57.

On April 26, 2016, Elam was seen by Dr. Zadeh. AR 257. An MRI taken the same day was "unremarkable." AR 208. On May 10, 2016, Elam saw Dr. Graziella for sinus problems and was diagnosed with acute sinusitis. AR 926. On May 30, 2016, Elma had another CT scan and

United States District Court
Northern District of California

1    the results were "negative."  AR 208.  On June 1, 2016, Dr. Luthra diagnosed Elam with chronic

2    sinusitis and postconcussion syndrome.  AR 1116.  On June 10, 2016, Dr. Luthra saw Elam again

3    and noted that her post-concussion syndrome and sinusitis symptoms were slowly improving.  AR

4    1147.

5         Elam took a month off work to try to recover.  AR 291.  When she returned to work, she

6    struggled.  AR 62.  She often missed work or left early and eventually cut her hours back.  AR 62.

7    Throughout June of 2016, Elam continued her doctor's visits for sinusitis.  AR 257.  In July of

8    2016, she again complained of dizziness.  AR 257.

9         On August 10, 2016, Elam sought mental health services.  AR 3033.  She reported that

10   "she has been crying, she gets headaches, and isn't as productive at work" and that "[s]he doesn't

11   have good social support from her family to help her with some tasks that she needs help with."

12   AR 3033.  The marriage and family therapist scheduled follow up appointments.  Elam also saw a

13   head and neck specialist, Dr. Shahangian, for her chronic sinusitis and postconcussion syndrome.

14   AR 1344, 1346.

15        On August 14, 2016, Elam took medical leave and stopped work entirely.  AR 62, 292.

16   Dr. Zadeh placed Elam "off work" from August 15, 2016 to August 29, 2016.  AR 1437.  She

17   attempted returning to work part-time with Overland and with other employers, but was

18   unsuccessful. AR 292, 411, 2588, 3200.

19        On August 22, 2016, she reported to Dr. Pietromonaco that she was experiencing

20   "concussion fatigue"—a condition she researched on Internet.  AR 3038-39.  She expressed

21   feeling that her "syndrome has not been adequately treated and understood by her medical

22   providers."  AR 3039.  Dr. Pietromonaco diagnosed her with mood disorder with depressive

23   feature.  *Id*.

24        On August 23, 2016, Elam was seen by Dr. Saglimbeni.  AR 78.  She reported that after

25   her bike accident, she developed severe neck pain, extreme somnolence and migraine-like

26   headaches.  *Id*.  She also reported that she had been diagnosed with a concussion and intractable

27   Case No.: 5:19-cv-04269-EJD

chronic sinusitis, for which surgery was scheduled. *Id.* She felt "slowed down, foggy, not feeling right, fatigue, drowsiness, trouble falling asleep, and moderate to severe nervousness, hyperemotionality, difficulty concentrating, photophobia, blurry vision and head pressure." *Id.* She said she was unable to perform well at work and felt she needed disability. *Id.*

The concussion testing showed Elam's reaction time was in the second percentile; her vision motor speed was in the nineteenth percentile; her verbal memory in the twenty-eighth percentile; and her visual memory in the thirtieth percentile. AR 79. A vestibular exam revealed abnormalities with saccadic eye movements and vestibulo-ocular reflexes. AR 78-79. Dr. Saglimbeni noted Elam was having significant concussion symptoms, but that the vestibular issues are dominant. AR 79. He also noted that Elam was having a "significant emotional and anxiety component." AR 79. Her cognitive efficiency index score was -0.17, which indicated she "performed very poorly on the reaction time component." AR 91.

On August 29, 2016, Elam began vestibular physical therapy. AR 1491. The therapist's assessment was as follows:

> Patient presents with a severe handicap on the Dizziness Handicap Inventory, dizziness reproduction with cervical spine range of motion and moving eyes to focus on a target, difficulty with focusing with vestibulocular exam, increased stiffness in suboccipitals, neck pain, and decreased static balance with eyes closed consistent with postconcussion syndrome with cervical and vestibular contributions.

AR 1495. Elam continued her therapy until September of 2017. AR 258, 2190. On August 30, 2016, Elam was seen by Dr. Nguyen. AR 1522. Her chief complaints were vertigo and headaches. AR 1522. Dr. Nguyen diagnosed her with intractable posttraumatic headache, occipital neuralgia, and myofascial pain syndrome. AR 1522. He administered trigger point injections and an occipital nerve block. AR 1526.

On September 1, 2016, Elam underwent a neuropsychological evaluation in order to assess her cognitive functioning and obtain a baseline. AR 1572. According to Dr. Severin, the tests indicated that Elam's baseline functioning was estimated to be average to above average. AR

United States District Court
Northern District of California

1575.  The results of the comprehensive test battery were within the expected range in most of the cognitive domain tests, including language skills, verbal visuospatial functioning, and executive functioning.  AR 1575.  Dr. Severin also noted that "[v]ariable scores with select mild difficulties were noted in attention/concentration, processing speed and learning and memory."  AR 1575.  Dr. Severin noted, however, that "*the patient's behavior during the testing, including anxiety, taking variable breaks and interrupting test instructions may have adversely impacted her performance on select measures and therefore, some results must be interpreted with caution.*"  AR 1576 (emphasis in original).  Dr. Severin concluded:

> Overall, there were no significant findings on the comprehensive cognitive testing protocol to support a diagnosis of Neurocognitive disorder.  The patient's cognitive profile with select variable performances in attention/concentration, speed and memory seem most consistent with her reported anxiety levels and testing behavior. The patient also reported that she feels as though her symptoms have gotten worse over time and are fluctuating in severity, which is inconsistent with symptoms typically observed in a concussion which tend to improve over the following weeks and months.  This also would suggest that anxiety/emotional distress are likely playing some role in her perception of lingering cognitive problems.

AR 1576.  Dr. Severin's diagnosis was that Elam suffered from "Generalized Anxiety Disorder." AR 1576.  On September 13, 2016, Elan had a follow up appointment with Dr. Nguyen.  AR 1693. They discussed the complexity of post concussive syndrome and he counseled her regarding active self-management strategies.  AR 1693.  On September 15, 2016, Elam was seen by Dr. Yen, who diagnosed her with generalized anxiety disorder and depressive disorder.  AR 3083-84.

On October 26, 2016, Elam was seen by Dr. Rob, who prescribed medications for post-concussion syndrome, gastroesophageal reflux disease; insomnia and neck pain.  AR 1883.  In early November 2016, Elam called a suicide hotline.  Elam's Opp'n at 7 (citing AR 3200).  On November 7, 2016, Dr. Ali, a gastroenterologist, diagnosed Elam with gastroesphageal reflux disease, typical chest pain and abnormal weight loss.  AR 1961.  On November 10, 2016, Elam was diagnosed with bilateral posterior vitreous detachment.  AR 2006.  Also in early November 2016, Elam began acupuncture for her headaches.  AR 1986.

United States District Court
Northern District of California

1    In December 2016, Elam decided to rent her house and move in with her mother.  AR 292.

2    She felt she could no longer care for her twin children properly, so she had them live with their

3    father (Elam's ex-husband).  AR 292.  On December 14, 2016, Elam's dizziness and

4    lightheadedness were "doing much better."  AR 258.

5    On March 16, 2017, Elam was diagnosed with right tinnitus (ear ringing) and left

6    eustachian tube dysfunction.  AR 2360.  In August of 2017, Elam began a course of Botox

7    injunctions for her headaches.  AR 2891.  Elam also underwent screening for attention deficit

8    hyperactivity disorder ("ADHD").  AR 3255.  In mid-August 2017, Dr. Severin concluded that

9    Elam's profile was associated with a moderate likelihood for significant attention disorder, such as

10   ADHD.  AR 3256.  However, Dr. Severin also noted that it was possible her attention problems

11   were due to another etiology, such as mood disorder, anxiety, life stress or other factors, and that

12   these factors should be ruled out prior to making a diagnosis of ADHD.  AR 3256.  In mid-

13   October of 2017, Dr. Yang diagnosed Elam with ADHD.  AR 3281-3283.  On October 23, 2017,

14   Elam wrote to her neurologist, Dr. Bhandari, asking for a referral to a vision doctor to treat her

15   blurry vision.  AR 2864.  She also reported feeling as if her brain was "swimming" in her head.

16   AR 2864.

17   On December 15, 2017, Elam was seen again by Dr. Yang, who diagnosed adjustment

18   disorder with mixed anxiety and depressed mood, as well as ADHD.  AR 3296.  On December 19,

19   2017, Elam called Kaiser's crisis line due to suicidal ideations.  AR 3303.  In January 2018, Dr.

20   Rob switched Elam's antidepressant medication.  AR 2939.

21   In February of 2018, Dr. Cho, PharmD, followed up with Elam regarding her medications

22   to treat depression.  AR 3346.  In March of 2018, Elam was diagnosed with sleep apnea.  AR 584.

23   Shortly thereafter, she began treatment, which improved the symptoms she associated with the

24   concussion.  AR 700.  In June of 2018, Elam returned to work on a part-time basis with another

25   employer.  AR 292.   By the end of August 2018, Elam was able to resume a full-time schedule.

26   AR 292.

27   Case No.: 5:19-cv-04269-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
     JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

1

**D.      Claim History & SSA Application**

2        On March 14, 2017, Elam filed a claim for benefits under the Plan.  AR 414, 143-144.  On

3   August 28, 2017, Elam applied for SSA benefits.  AR 470.[1]  Elam's application for SSA benefits

4   was initially denied on October 11, 2017, and upon reconsideration on January 30, 2018.

5        On October 15, 2017, Anthem denied Elam's disability claim based on the opinion of Dr.

6   Warren Taff, a board-certified psychiatrist from Exam Coordinators Network ("ECN").  AR 134-

7   135, 136-137.

8        In February 2018, Elam filed a request for a hearing before an Administrative Law Judge.

9        In April 2018, Elam appealed Anthem's decision and requested LTD benefits.  Elam

10  provided (1) records from Kaiser-San Jose for April 10, 2016 through March 12, 2018; (2) records

11  from South Bay Sports and Preventative Medicine Associates (SBS) for August 23, 2016 through

12  December 23, 2016; (3) Chiropractic records from Dr. Michael McMurray for April 2, 2016

13  through April 18, 2016; (4) Chiropractic records from Dr. Julie Henney for March 1, 2016 through

14  February 13, 2018; (5) a Treating physician's report from Dr. Farhana Rob dated November 21,

15  2017, along with a work-status report dated January 10, 2018 and a physician certification letter

16  dated May 9, 2018. AR 212-13.

17       Anthem referred Elam's claim to Dane Street, a third-party organization that provides

18  independent medical peer reviews.  Elam's claim was assigned to Dr. Elena Mendelssohn, a

19  board-certified neuropsychiatrist, and Dr. Patrick Young, a board-certified psychiatrist.  Based on

20  their reviews, Anthem upheld the denial of Elam's claim on June 21, 2018.  AR 2-11, 61-66, 134-

21  35, 267-71 276-83.

22       In December of 2018, Elam requested a courtesy secondary appeal and submitted

23  supplemental material consisting of (1) medical records from Kaiser-San Jose for dates of service

24

25  _____

[1] According to Anthem, Elam submitted a request to the SSA on February 8, 2018.  Anthem's
26  Mot. at 6.  However, Anthem fails to provide a citation to the AR to substantiate the February 8,
2018 date.

27  Case No.: 5:19-cv-04269-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
28  JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

United States District Court
Northern District of California

from March 2018 through November 2018; (2) a letter from Heather Newberry dated November 1, 2108; (3) a letter from Melanie Lougee dated November 30, 2018; (4) a declaration letter from Katherine Teuschler dated December 3, 2018; (5) a declaration letter from Elam dated December 13, 2018; and (6) wage information. AR 205. Elam's claim file was reviewed again by Dr. Mendelssohn and Dr. Young. In addition, Dr. Ross Clark and Dr. David Hoenig performed an otolaryngological (ear, nose and throat) and a neurological review, respectively.

On February 14, 2019, Anthem denied Elam's second appeal based on the reports of Dr. Mendelssohn, Dr. Young, Dr. Clark and Dr. Hoenig, except that Anthem concluded a Disability finding was reasonably supported for April 2, 2016 (the date of the bike accident), to April 29, 2016. AR 204-209, 244-250, 253-59, 271-73, 283-85. Elam did not receive benefits for April 2, 2016 to April 29, 2016 because Elam worked and received 100% of her weekly pay during this period. AR 525-27. Because Anthem did not approve benefits through the thirteen-week STD maximum benefit period, Anthem did not consider Elam's request for LTD. AR 239.

In June 2019, the Social Security Administration approved Elam's claim for disability benefits for the relevant period. AR 465-479. Specifically, the ALJ found that from August 15, 2016 through June 25, 2018, Elam had a severe mental impairment due to postconcussive syndrome with an organic cognitive disorder. AR 473. Elam requested that Anthem revise its decision in light of the Social Security award. AR 463. On July 3, 2019 Anthem responded that the Social Security award did not change its decision. AR 463-464. Elam initiated this action on July 25, 2019. Dkt. No. 1.

## II.    STANDARDS

The parties stipulate that *de novo* review applies in this matter. Dkt. No. 26. In conducting a de novo review, the court considers the record and then "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). An ERISA *de novo* review is a bench trial in which the district court sits as finder of fact and determines, as a factual matter, whether the claim should

United States District Court
Northern District of California

have been approved. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999); *Frank v. Wilbur-Ellis Co. Salaried Emp.*, 2009 WL 347789, at *5 (E.D. Cal. Feb. 11, 2009). The court first examines the governing plan documents. *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113 (9th Cir. 2006); *Gertjejansen v. Kemper Ins. Companies, Inc.*, No. 06-56329, 274 Fed. Appx. 569, 571 (9th Cir. 2008). "[O]nly the evidence that was before the plan administrator at the time of determination should be considered." *Opeta v. Nw. Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007) (citation omitted). The court then makes an independent determination of the claim on the merits. *Parra v. Life Ins. Co. of N. Am.*, 258 F. Supp. 2d 1058, 1064 (N.D. Cal. 2003). The Court can "evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1123 (C.D. Cal. 2015) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999)).

A medical diagnosis by itself does not prove a disability because certain diagnoses do not necessarily prevent people from working. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004). Rather, "[i]t is an individual's ability to function, not simply their diagnosis, that entitles him or her to disability benefits." *Biggar v. Prudential Ins. Co. of Am.*, 274 F. Supp. 3d 954, 966 n.9 (N.D. Cal. 2017) (quoting *Holifield v. UNUM Life Ins. Co. of Am.*, 640 F. Supp. 2d 1224, 1237 (C.D. Cal. 2009)).

When a court conducts a *de novo* review, the burden is on the claimant to prove by a preponderance of the evidence that she was disabled and eligible for benefits under the terms of the insurance policy. *See Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1162-63 (9th Cir. 2016). To meet the preponderance standard, a claimant must prove it is "more likely than not" that she was disabled. *Gallegos v. Prudential Ins. Co. of Am.*, 2017 WL 2418008, at *1 (N.D. Cal. June 5, 2017).

## III. DISCUSSION

Anthem contends that the administrative record firmly supports its conclusion that Elam was not disabled within the meaning of the Policy. Elam counters with several overarching

Case No.: 5:19-cv-04269-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

challenges as well as specific evidentiary challenges to Anthem's determination.  Elam also highlights the portions of the administrative record that support a finding of disability.  The Court addresses the overarching challenges first before proceeding with a review of the evidence.

### A.    "Self-Reported Symptoms"

The parties dispute whether a provision regarding "Self-Reported Symptoms" applies.  The "Self-Reported Symptoms" provision states in pertinent part:  "Monthly Benefit Payments are limited to a maximum of 24 months during Your lifetime for Disabilities that are based on Self-Reported Systems."  AR 3386.[2]  Plaintiff relies on this provision to support her argument that STD benefits and LTD benefits for the first twenty-four months of eligibility "can be paid" based on "self-reported symptoms."  Elam's Mot. at 8 (citing AR 342, 3386).

The "Self-Reported Symptoms" provision APPEARS only in the "Mental Illness, Alcoholism, Drug Addition" section of the LTD Policy, not the STD Policy.  Therefore, it applies to Elam's request for LTD benefits.  The LTD Policy defines "Mental Illness" as "any psychiatric or emotional illness or disease listed in the Diagnostic and Statistical Manual" including, but not limited to, neurotic disorders, psychotic disorders, personality disorders, and syndromes.  AR 3385.  Thus, LTD benefits can be paid based on "Self-Reported Symptoms" up to a maximum of 24 months; however, the Policy does not require payment of benefits based solely on "Self-Reported Symptoms."

Relatedly, Elam contends that the opinions of Anthem's medical reviewers are not reliable because Anthem failed to inform them of the "Self-Reported Symptoms" provision of the Policy, and therefore the medical reviewers failed to understand that self-reported systems could be sufficient to establish a disability.  This argument is entirely speculative.  The administrative record includes the Policy and all of Elam's medical records, which describe self-reported

---

[2] Self-reported symptoms that are an acceptable basis for a finding of disability include fatigue, dizziness, and loss of energy.  AR 3386.

Case No.: 5:19-cv-04269-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

United States District Court
Northern District of California

symptoms.  There is no evidence to suggest the medical reviewers disregarded either the Policy or Elam's self-reported symptoms.  Moreover, there is nothing inappropriate about the medical reviewers noting a lack of objective evidence.  *See Seleine v. Fluor Corp. Long Term Disability Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009) ("[N]umerous Courts have concluded that an administrator does not abuse its discretion by requiring objective evidence of an inability to function in the workplace.").

### B.   Purported Failure to Obtain Elam's Job Description

Elam contends that Anthem's evidence is not persuasive because Anthem never obtained a job description of her role as director of marketing communications at Overland Storage, and therefore, Anthem was "ignorant of what duties Ms. Elam would have to do in order to continue working." Elam's Mot. at 22:7-9.  This is inaccurate.  The record includes a description of Elam's responsibilities.  *See* AR 73 (Dr. Saglimbeni's notes containing vocation section), 1631 (Kaiser medical records with a vocational section).  In addition, Elam provided a complete description of her duties when she submitted her appeal.  AR 291.  Elam also questions whether Anthem's medical reviewers considered it because none of them refer to it in their opinions.  The record indicates otherwise.  *See e.g.*, AR 31 ("see job description"), 37 (same), 270 (same), 282.

### C.   Purported Failure to Conduct Physical Exam

Elam complains that none of the claim reviewers examined her.  However, a physical examination is not required.  *See Frost v. MetLife Ins. Co.*, 320 F. Appx. 589, 592 (9th Cir. 2009) ("MetLife was not required to conduct an independent medical examination… MetLife was not required to have its consultants examine [the plaintiff] or consult with her treating physicians."); *Nicula v. First UNUM Life Ins. Co.*, 23 F. Appx. 805, 807 (9th Cir. 2001) ("There is no absolute requirement of an independent medical examination. Where, as here, other substantial evidence rebuts the opinion of the insured's treating physician, an independent medical examination is not necessary.").

United States District Court
Northern District of California

**D.    Purported "Passing the Buck"**

Elam accuses the medical reviewers of "passing the buck," meaning that one reviewer would suggest Elam might be disabled due to a condition being considered by another reviewer. Elam's Opp'n at 10.  The suggestion is baseless.  It is evident from the record that each reviewer considered Elam's medical records and rendered opinions within their area of expertise and practice, while acknowledging that certain symptoms may require review by other experts.  That is why Anthem involved five board-certified independent reviews specializing in neuropsychology, psychiatry, otolaryngology and neurology.  The result was a comprehensive review of all of Elam's diagnoses and symptoms.

**E.    Medical Records that Support a Finding of Disability**

The Court finds by a preponderance of the evidence that Elam was disabled from August 15, 2016 to July 4, 2017.  During that period, Elam complained of listlessness/fatigue, dizziness, poor balance, headaches, difficulty concentrating, sensitivity to light, blurry vision, anxiety, and depression.  She suffered from chronic sinusitis and symptoms associated with postconcussion syndrome.  The Court finds it is more likely than not that Elam suffered from the self-reported symptoms.  Dr. Zadeh placed Elam "off work" from August 15, 2016 to August 29, 2016.  AR 1437.  On August 22, 2016, Dr. Pietromonaco diagnosed her with mood disorder with depressive feature.  AR 3039.  Also in August 2016, Dr. Saglimbeni conducted concussion testing and noted that Elam was having significant concussion symptoms; that the vestibular issues are dominant; and that there was a "significant emotional and anxiety component."  AR 79.  On August 30, 2016, Dr. Nguyen diagnosed Elam with intractable posttraumatic headache, occipital neuralgia, and myofascial pain syndrome.  AR 1522.  On September 14, 2016, Dr. Severin's diagnosis was that Elam suffered from "Generalized Anxiety Disorder."  AR 1576.  On September 15, 2016, Dr. Yen also diagnosed Elam with generalized anxiety disorder and added depressive disorder.  AR 3083-84.  Thereafter, Dr. Rob placed Elam on "off work" status for the following periods: October 28, 2016 through January 18, 2017 (AR 1953); January 18, 2017 through March 5, 2017

(AR 2252); February 27, 2017 through March 26, 2017 (AR 2337); and June 19, 2017 through July 4, 2017 (AR 2500).  Dr. Rob stated that Elam became her patient on October 26, 2016, and at that time was complaining of mood swings, insomnia, weight loss, constant feelings of nausea and dizziness, as well as daily headaches.  AR 119.  Dr. Rob opined that these symptoms "aligned with a diagnosis of postconcussion syndrome."  AR 119.  The treating physicians identified above had a greater opportunity to know and observe the patient than the physicians retained by Anthem. Therefore, the Court generally gives the treating physician's opinions slightly more weight than the opinions of the physicians retained by Anthem.  *See Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1109 n.8 (9th Cir. 2003) ("On de novo review, a district court may, in conducting its independent evaluation of the evidence in the administrative record, take cognizance of the fact (if it is a fact in the particular case) that a given treating physician has "a greater opportunity to know and observe the patient" than a physician retained by the plan administrator.").

Elam's job at Overland required a full-time commitment and up to six hours of uninterrupted computer time.  *See* AR 334 (In June 2017, Elam's request to return to employment on a part-time basis was denied); *see also* AR 35 (describing Elam's work occupation as requiring up to six hours of uninterrupted computer time).  Thus, the full-time commitment and the ability to work up to six hours on a computer uninterrupted were "Material and Substantial Duties of [her] Own Occupation," within the meaning of the LTD Policy.  *See* AR 2511.  The Court finds it is more likely than not that the combination of Elam's self-reported symptoms—especially the postconcussion syndrome symptoms, vestibular issues, anxiety and depression—left Elam functionally impaired such that she could not return to full-time employment and use a computer uninterrupted for up to six hours a day.  Therefore, the Court finds Elam was disabled within the meaning of the policy through July 4, 2017.[3]

---

[3] There is additional evidence to support a finding of disability for this period, including the SSA determination and the observations of third parties.  This evidence is discussed in later sections of

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court finds that the administrative record lacks sufficient evidence to prove by a preponderance of the evidence that Elam was disabled beyond July 4, 2017.  Although Dr. Rob placed Elam on "off work" status from September 5, 2017 through January 7, 2018, this decision was based on nothing more than a phone call lasting anywhere between eleven to twenty minutes. AR 2805.  Moreover, the Progress Notes reflect only a cursory evaluation of Elam's condition: "Patient does not appear to be in acute distress on the telephone.  Speech is not pressured, breathing sounds normal."  AR 2803.  The administrative record includes another work status report by Dr. Rob placing Elam on "off work" status from September 7, 2017 through June 10, 2018, however the "Encounter Date" for that report is January 10, 2018, which is months before the beginning of the "off work" status, and the is no evidence of any assessment of Elam's symptoms.  The medical reviewers made repeated attempts to contact Dr. Rob to discuss Elam's condition, but they were unsuccessful.  AR 231, 236, 237.  The Court also notes that Elam discontinued vestibular therapy in late September 2017.  AR 258, 2190.[4]

**F.    SSA Award**

Elam relies on the SSA records and the award of SSA benefits to support her claim in this case.  Anthem argues that the SSA determination should not be considered because it was not part of the claims record when Anthem made its decision on the second appeal.  Anthem's Mot. at 18. Elam counters that the SSA decision should be considered part of the administrative record because Anthem considered the SSA's decision.

On de novo review, a court typically limits its review to the administrative record that was considered by the plan administrator.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1090.  A court, however, has discretion to allow evidence that was not before the plan administrator "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de

---

this Order.

[4] The opinions of the medical reviewers also support a finding of no disability after July 4, 2017.

1  novo review." *Id.* (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46

2  F.3d 938, 944 (9th Cir. 1995).  Here, Anthem acknowledged receipt of the SSA determination,

3  declined Elam's request for additional consideration based on the SSA determination, but then

4  stated inconsistently that Anthem "consider[ed] the SSA's disability determination as one piece of

5  relevant evidence."  AR 463.  Because Anthem stated it considered the SSA's determination, the

6  Court concludes that it should be treated as part of the administrative record and will be

7  considered herein.  The SSA determination, however, is not binding on the Court.  *See Madden v.*

8  *ITT Long Term Disability Plan*, 914 F.2d 1279, 1285 (9th Cir. 1990).

9      The records from the SSA and the award of SSA benefits provide additional support for a

10  finding that Elam was disabled within the meaning of the Plan.  In the context of the SSA

11  proceedings, the psychiatric reviewer, Dr. Collado, concluded that Elam had "understanding and

12  memory limitations," "sustained concentration and persistence limitations," and only had the

13  ability to complete simple repetitive tasks. AR 487-88.  The Social Security's consulting

14  psychiatrist, Dr. Amado, reviewed Elam's records and similarly concluded she had understanding

15  and memory limitations, sustained concentration and persistence limitations, and was only "able to

16  implement simple instructions on a consistent basis." AR 502.  Based on Dr. Amado's January

17  2018 assessment, the SSA's vocational consultant concluded Elam was limited to "unskilled

18  work." AR 504.  On May 13, 2019, Elam's case was heard by ALJ Sleater.  AR 470.  Elam

19  appeared and testified at the hearing.  AR 470.  An impartial vocational expert, Nathan Strahl,

20  M.D., diagnosed Elam with postconcussive syndrome with organic cognitive disorder.  AR 478.

21  Dr. Strahl opined that Elma had a moderate limitation in understand, remembering, or applying

22  information; a mild limitation in interacting with others; a marked limitation in concentrating,

23  persisting, or maintaining pace; and a marked limitation in adapting or managing herself.  AR 478.

24  The ALJ found Dr. Strahl's opinion very persuasive and ultimately found Elam disabled from

25  August 15, 2016 through June 25, 2018.  AR 478-79.  The Court parts company with the ALJ's

26  decision only insofar as she awarded benefits beyond July 4, 2017 for reasons already discussed

27  Case No.: 5:19-cv-04269-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

United States District Court
Northern District of California

above.

### G.    Search for Cure

Elam's repeated attempts to find a treatment that might help her recover, including chiropractic adjustments, acupuncture, vestibular therapy, medication, psychiatric care, and Botox injections (*see, e.g.* AR 78, 98, 1883, 2367, 2394, 2651, 3292), tend to corroborate the severity of her postconcussive symptoms.  *See Sangha v. CIGNA Life Ins. Co. of NY*, 314 F. Supp. 3d 1027, 1036 (N.D. Cal. 2018) ("the consistency and severity of Plaintiff's complaints and her pursuit of medical treatment over time support her claim of disability"); *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 646 (7th Cir. 2007) ("repeated attempts to seek treatment for his condition supports an inference that his pain, though hard to explain by reference to physical symptoms, was disabling.").  Therefore, the repeated search for treatment suggests it was more likely than not that the severity of Elam's postconcussion syndrome symptoms prevented her from working full-time and uninterrupted on a computer for up to six hours a day through July 4, 2017.

Elam's attempts to find new treatments diminished somewhat after July of  2017.  There are records of Botox injections for headaches in August 2017; screening for ADHD; and a request for a referral to a vision doctor.

### H.    Observations of Third Parties

Three of Elam's friends submitted declarations describing how the bike accident affected her.  AR 295 ("symptoms went on for months"), 297-99 (recounting observations of Elam's symptoms from August 2016 to August 2018), 301-02 (attesting to Elam's impaired cognition after the bike accident).  The declarations substantiate the symptoms Elam reported to medical providers, including anxiety, depression, vertigo, vision problems, decrease in cognition and overall health and wellness.  One friend stated that after the bike accident, Elam was unable to care for her twin teenage children.  AR 302.  The Court finds that these declarations credible and tend to lend some support to a finding that Elam's diagnoses and symptoms were disabling within the meaning of the Policy through July 4, 2017.  Absent additional proof from medical experts and

United States District Court
Northern District of California

and/or testing, however, the observations of Elam's friends, who are lay witnesses, are insufficient to prove by a preponderance of evidence that Elam's diagnoses and symptoms caused functional limitations that rendered her disabled after July 4, 2017.

### I.   Defendant's Evidence

Five independent board-certified physicians reviewers specializing in the fields of neuropsychology, psychiatry, otolaryngologist, and neurology – all agree that the administrative record simply does not support a finding that Elam was "Disabled."  The Court finds some of the physicians' opinions persuasive and others not helpful.  On balance, the Court finds that the evidence of disability is slightly more persuasive for the period August 15, 2016 to July 4, 2017, and that the evidence of disability after July 4, 2017 is insufficient to support a finding of disability.

#### 1.   Warren Taff

Dr. Taff reviewed Elam's medical records and diagnosed "Depression, Unspecified."  AR 136-37.  He concluded that for the periods August 15, 2016 to October 17, 2016 and October 28, 2016 to September 19, 2017, the medical records did not support an impairment secondary to psychiatric symptoms or conditions, although he did note that the medical records "maintain[ed] a clinical focus on the claimant's vestibular issues."  AR 137.

The Court finds Dr. Taff's approximately 2-page opinion letter unhelpful.  The summary of the medical records is minimal and there is no analysis in the opinion letter.  It is therefore unclear whether he considered, for example, the requirements of Elam's job and whether a combination of the postconcussion syndrome, vestibular issues and the psychiatric symptoms or conditions caused disabling functional impairments.  Further, other than the neuropsychological testing carried out at Kaiser, Anthem did not provide Dr. Taff with any of Elam's psychiatric and psychological records or the concussion testing done by Dr. Saglimbeni.  *Id.*

#### 2.   Dr. Elena Mendelssohn

At the first level appeal, Dr. Mendelssohn, a board-certified neuropsychologist, reviewed

Elam's claim file and concluded that "no functional restrictions - limitations - impairments are reasonably supported . . . from a neuropsychological standpoint." AR 15.  Dr. Mendelssohn noted several flaws with the assessment performed by Drs. Saglimbeni and Severin (AR 25-32), as well as what she perceived as inadequate information from Dr. Rob to substantiate Elam's inability to carry out her own occupation from a neuropsychological perspective (AR 16, 20).  Dr. Mendelssohn noted that Dr. Saglimbeni used a cognitive screening measure that was "developed and normed with athletes" to test whether athletes were read to return-to-play.  AR 28, 90-94.  As such, Anthem contends that the appropriateness of the cognitive screening measure was, at best, questionable.  AR 28.  Dr. Mendelssohn also noted that there was no evidence that symptom validity measures were utilized to ensure valid test results and to rule out symptom magnification.  AR 28, 31, 1576.  Similarly, Dr. Mendelssohn noted that Dr. Severin's neuropsychological exam did not utilize symptom validity measures to rule out symptom magnification.  AR 31.  Dr. Mendelssohn also noted that Elam had not sought regular behavioral therapy for the reported depression and anxiety.  AR 31.  Dr. Mendelssohn spoke by telephone with Dr. Rob, but Dr. Rob "did not address questions relative to the claimant's ongoing complaints in relation to neuropsychological dysfunction."  AR 20.

At the second level appeal, Dr. Mendelssohn affirmed her prior opinions.  AR 276-286.  Dr. Mendelssohn noted that the supplemental material contained very limited neuropsychological treatment information.  AR 206.  She specifically noted that Dr. Rob's letter dated June 18, 2018 (approximately two years after the bike accident), "did not include examination findings to corroborate her opinion from a neuropsychological standpoint."  AR 206.  Dr. Mendelssohn also commented that Dr. Rob's findings from a physical examination of Elam on August 29, 2018 were "unremarkable and indicated the claimant had presented as alert, oriented and with no gross neurological focal deficits.  The notes also indicated she had demonstrated appropriate mood, congruent affect, normal speech and normal thought processes."  AR 206.

United States District Court
Northern District of California

1    Although the Court finds Dr. Mendelssohn's opinions persuasive, the Court finds the

2    evidence of disability for the time frame August 15, 2016 to July 4, 2017 slightly more

3    persuasive.[5]  As to the critiques of the assessment conducted by Dr. Saglimbeni, the Court notes

4    that independent examiner Dr. Young stated that the "testing was generally accepted in the

5    practice of medicine as providing objective evidence to support the diagnosis of [post concussive

6    syndrome]."  AR 35.  As for Dr. Severin, he did not conduct validity testing; however, his notes

7    include a section titled, "Effort and Test Validity," which the Court finds is an adequate substitute

8    for validity testing.  AR 1574.  Dr. Severin observed as follows:

> Ms. Elam appeared to provide adequate effort levels during the testing
> session; however, she presented as very anxious and often interrupted
> with questions and comments during the reading of test instructions.
> For example, on several occasions as instructions were being read,
> she interrupted stating that these were the types of problems that she
> was trying to relate to her treating neurologist.  She required redirect
> at times to listen to the instructions before asking questions or
> guessing at the purpose of the test. . . . She also reported needing
> breaks on visual tests because of dizziness issues.  After about two
> minutes of rest, she appeared to be able to proceed without difficulty.
> She also expressed anxiety at times due to her perception of poor
> performance and then would stop the task to explain her frustration.
> These behaviors may have adversely impacted her performance on
> select measures and therefore, some results must be interpreted with
> caution.

17   AR. 1574.  Dr. Mendelssohn is correct that Elam did not receive regular behavioral therapy.

18   Nevertheless, the record is clear that Elam received care for depression and anxiety.  At various

19   times, she was taking medication for depression and/or anxiety, including Venlafaxine,

20   Trazodone, Lexapro, Wellbutrin, Nortriptyline, and Effexor.  AR 36.

21   The Court finds persuasive Dr. Mendelssohn's opinion that most symptoms associated

22   with postconcussion syndrome resolve within one year after injury.  AR 279.  Dr. Mendelssohn

---

[5]  Elam suggests Dr. Mendelssohn's (and Dr. Young's) opinions are not reliable because their
opinions have been rejected by other courts or they are biased.  Mot. at 23-24 (citing cases).  The
suggestion is inappropriate and unpersuasive.  Dr. Mendelssohn's and Dr. Young's opinions in
other cases are irrelevant to the issues before this Court.

Case No.: 5:19-cv-04269-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

20

United States District Court
Northern District of California

opined that "it remains unclear whether this diagnosis is accurate beyond one year given the claimant's ongoing complaints in addition to reported worsening of symptoms, which is not consistent with the typical recovery from this condition." AR 279. Dr. Severin similarly noted that symptoms fluctuating in severity are inconsistent with what is typically observed in a concussion. AR 1576. Therefore, the Court finds it is more likely than not that approximately a year after the bike accident, April 12, 2017, Elam's postconcussion symptoms were lessening and by July 4, 2017, not so severe as to be disabling within the meaning of the Policy. Although Elam continued to suffer from depression and anxiety beyond July of 2017, the Court finds it is more likely than not that these conditions were not disabling within the meaning of the Policy because there is an absence of regular behavioral therapy, as noted by Dr. Mendelssohn, and for the reasons stated by Dr. Young, which are discussed below.

### 3. Dr. Patrick Young

Dr. Young, a psychiatrist, found that Elam's medical records support diagnoses of major depressive disorder and generalized anxiety disorder. AR 20, 36-37, 267-74. Dr. Young concluded, however, that these diagnoses did not support a finding that Elam was unable to perform the material and substantial duties of her occupation. AR 37. Specifically, Dr. Young opined:

> Clinical evidence does not support that her depression, anxiety, or any other psychiatric condition caused impairment. She reported a depressed and anxious mood, but she had normal thought process and normal thought content. Even though she said that she could not focus, her cognitive testing was totally normal. There were no issues with her memory, attention, or concentration. Also, she was seen infrequently, and only at an outpatient level of care. Symptoms were not significant enough to warrant a higher level of care. She also went for periods of time when her symptoms were minimal. Therefore, clinical evidence does not support functional impairment with respect to psychiatry.

AR 37.

At the second level appeal, Dr. Young noted that the supplemental material did not "contain much in terms of psychiatric issues," and that, despite notes that indicated Elam was

United States District Court
Northern District of California

1    receiving treatment for depressive symptoms, the additional information was absent "any

2    significant psychiatric findings."  AR 207.  In summary, Dr. Young concluded that the record

3    supported a diagnosis of major depressive disorder, but that there was no detailed information

4    regarding Elam's "symptom severity, frequency, duration, or course."  AR 269.

5         Overall, the Court finds Dr. Young's assessments  persuasive.  The Court agrees with Dr.

6    Young's conclusion that the diagnosis of ADHD was not reasonably supported.  Dr. Young

7    explains that ADHD is a chronic condition and that the medical records are inconsistent about this

8    issue.  AR 271; *see also* AR 30 (Dr. Mendelssohn stating that a diagnosis of ADHD should be

9    corroborated with test data to ascertain the presence of cognitive deficits).  In particular, Dr.

10   Severin noted that ADHD was less likely because Elam took the CPT as part of a

11   neuropsychological evaluation in 2016 and the results were relatively normal.  AR 3256.

12        The Court gives Dr. Young's opinions less weight than those of Elam's treating physicians

13   for the period up to July 4, 2017.  This is because during that period, Elam suffered from a

14   combination of symptoms, which Dr. Young does not account for.  For example, Dr. Severin's

15   testing in September of 2016 revealed mild difficulties in attention, concentration, processing

16   speed and learning memory.  AR 1575, 3256.

17                    4.   Dr. Clark

18        At the second level review, Dr. Clark did not find any "clinical finding from the ENT (ear,

19   nose, throat) purview that would preclude the claimant from safely performing full time work

20   from 4/2/16."  AR 207.  Dr. Clark indicated that there was no clinical evidence to support a

21   vestibular disorder and that an exam in July of 2016 indicated Elam had "normal eardrum

22   mobility."  AR 207.

23        Overall, the Court finds Dr. Clark's opinion less persuasive than the opinions of Elam's

24   treating physicians.  The vestibular exam in August of 2016 revealed abnormalities with saccadic

25   eye movements and vestibulo-ocular reflexes (AR 78-79) and the vestibular screening in October

26   of 2016 made Elam dizzy (AR 68-69).  Furthermore, Elam attended numerous vestibular therapy

27   Case No.: 5:19-cv-04269-EJD
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
28   JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

United States District Court
Northern District of California

United States District Court
Northern District of California

1   sessions to help her cope with vestibular issues.  The vestibular issues, in combination with Elam's

2   other symptoms, rendered her disabled through July 4, 2017.

3               5.   Dr. Hoenig

4         Dr. David Hoenig, a board-certified neurologist, concluded that "a functional impairment

5   associated with a concussion would have only been medically reasonable for approximately four

6   (4) weeks from the date of her injury.  Otherwise, no other impairments or restrictions were

7   supported from a neurological standpoint."  AR 208.  Dr. Hoenig based his opinion on Dr.

8   Zadeh's neurological evaluation of Elam by Dr. Zadeh, which noted findings of normal sensation,

9   reflexes, motor exam, coordination, cranial nerves and gait.  AR 208; AR 247-48.  Dr. Hoenig also

10   relied on the results of the April 20, 2016 and May 30, 2016 CT scans.  AR 208.  Further, Dr.

11   Hoenig noted that there was insufficient evidence on file to support any further impairment

12   beyond one month after the bike accident.  AR 249.

13         The Court gives Dr. Hoenig's opinion less weight than the opinions of Elam's treating

14   physicians for the period ending July 4, 2017.  First, Dr. Hoenig's opinion that functional

15   impairments associated with a concussion would only persist for four weeks is somewhat

16   inconsistent with Dr. Mendelssohn's recognition that symptoms of postconcussion syndrome

17   could take longer.  *See* AR 279 ("typically recover from post-concussive syndrome occurs within

18   weeks to months following the injury with most symptoms resolved within one year after injury").

19   Second, there is evidence on file indicating that Elam continued to suffer symptoms of

20   postconcussion syndrome for more than just one month and sought medical treatment for those

21   symptoms.  *See*, *e.g.* AR 69-72 (October 2016).  Moreover, as discussed previously, it was not just

22   postconcussive syndrome symptoms, but a combination of a variety of symptoms, that rendered

23   Elam disabled through July 4, 2017.

24   **IV.   CONCLUSION**

25         The parties' respective motions are granted in part and denied in part.  The Court finds that

26   for the period August 15, 2016 through July 4, 2017, the preponderance of the evidence in the

27   Case No.: 5:19-cv-04269-EJD
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
28   JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
    DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52

administrative record shows Elam was disabled under the terms of the Plan.  The administrative

record fails to establish by a preponderance of the evidence that Elam was disabled after July 4,

2017.  The parties shall meet and confer and submit a stipulated proposed judgment in accordance

with this Order no later than September 16, 2021.

**IT IS SO ORDERED.**

Dated:  September 7, 2021

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-04269-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
JUDGMENT UNDER FRCP 52; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT UNDER FRCP 52
24